Representing the appellant in this matter, Larry Woods. This is a matter from Western District of North Carolina, Statesville Division. This is an appeal from a supervised release violation. I was the attorney at record in that matter, this matter, which is the subject matter of the appeal. The issue in this case has been decided by this court in United States versus Doswell. And in the Doswell case, the court said that prior to admitting hearsay evidence, the court must use the balancing test as outlined in Federal Rules of Criminal Procedure, Rule 32.1. And in this particular case, the court didn't do that. As in the Doswell case, that had to do with a drug lab report that was admitted into evidence during the supervised release violation hearing. And the lab technician did not appear during that hearing to testify about the lab. And counsel for Doswell certainly had objected and their argument was that the substance, I believe it may have been heroin, was not in fact heroin. And despite counsel's objection, the court still allowed that evidence to be admitted. And the court, this court said in Doswell that the error by that court was not, they did not do a reliability finding. And they made no attempt to engage in the balancing test under Rule 32.1. And- The opposing counsel in his brief looked like it pretty closely concedes the fact that the court did not, the language is the court did not explicitly apply the balancing test. And go on to say that even if that discretion in admitting those statements is made, it's harmless. And it seems like to me that's kind of the focus of where we are. It's harmless in that the, maybe the government presented a reason as to why those witnesses weren't there, or the court did some type of determination that even with this error, this evidence was overwhelming. Well, two parts to that. I know the government did concede that, but in regards to the harmless error, first of all, I would certainly contend that it was not harmless error, that the evidence presented, this hearsay evidence presented, and it was two witnesses, Alicia Crisp and Sarah Williams, that did not appear. This evidence against the appellant in this case was essential to the court finding that he committed the violations. I know the government points out in their brief that the defendant testified, admitted some things, but I would argue that the fact that this evidence was allowed to come in, changed how we had to proceed during the hearing. In other words, had this evidence not been allowed, or at least the balancing test been done, certainly then we would have decided if we would have even put the defendant up at that particular point. To also address the issue about the whereabouts of the witnesses, in regards to the issue that we have, first of all, is under the balancing test is the court, at no time during that hearing, did the court ever inquire with the government about the whereabouts of either witness. There was, I myself asked a question to the appellant's probation officer about one of the witnesses, I believe that was Sarah Williams. And the court said, I mean, and the probation officer testified that she had indicated to him that she didn't want to judge anybody, that that's not what she wanted to do. But at no point did he say ever that she told him that she was not going to come to court. Also, in regards to Alicia Crisp, the probation officer actually admitted that he never even informed her about that court date. He said he spoke to her previously, but he said that she had spoken, he believes she's spoken to one of the US attorneys. Doesn't that go though to the question that the government has conceded, and that is that there was no balancing test? Yes, Your Honor. And that's really not the debate, is it? The government isn't arguing that there was a balancing test. It acknowledges that a balancing test was not conducted. Absolutely. And the question is, is that fatal? Or is that error arguably harmless? And I think that's perhaps a better area for you to focus on. Well, Your Honor, I certainly argue that it was certainly a fatal error to our case. As I stated before, it affects how you proceed through the hearing. Also, it does not give you the ability to cross-examine an individual that gave these statements under oath and attempt to elicit favorable testimony to the appellant in this case. And also, as I've stated, that it affects how you proceed throughout the hearing. And I would continue, also, I know the government points out there was some pictures. I know there was an officer that responded to the scene that had some, I believe he described a hole in the wall or a door being broken. And described some other evidence that he saw once he arrived. But I would contend to the court that that information from the officer without the hearsay evidence is useless. I know the government argues that that corroborates the testimony from both witnesses. But again, that's the hearsay evidence. And there's nothing else to go on besides what this officer says is seen. But that's not enough to find a violation. Well, perhaps it would be helpful to look at the non-hearsay evidence. Yes, Your Honor. So there were photos of the ripped clothing and the injuries and the property damage. And in fact, Mr. Woods didn't object to the introduction of that evidence. So you did have photographic evidence of the aftereffect of the altercation. Torn clothing and the resulting property damage, is that correct? Well, that evidence was introduced, and I don't recall. I know at some point, I kept objecting at some point, and the judge said, you'll just have a continuous objection. Okay, well, let me just, but there was, and that's fine. Perhaps there was an objection to that, but that evidence did come in. Yes, it did, Your Honor. And you have Williams' contemporaneous commentary, which could qualify as an exception under the hearsay rule as an excited utterance. Well, Your Honor, in regards to that, the argument I would make about that is that there was some inconsistent statements, obviously, that came in. There was a probation officer that testified about a conversation he had with her. There was the respondent officer that also testified about his report and about what she told him when he arrived. And it was never clear, this alleged assault that took place. It was not the assault, the alleged assault took place. He called the police. They arrived immediately after it happened. This was an incident that she described, based on both testimony from the officer and the probation officer, that this occurred throughout the night. That there was supposedly an incident that was maybe around two or three in the morning. That dad died down, that they went to sleep, that something else happened later on. That after that, the daughter of this alleged victim went across the street and called the police, and then sometime after that, they arrived. So I'm not, I wasn't quite clear, based on what was allowed in, as to when the timeline, as to when exactly was this the last alleged assault, and when, what was the time that the officer actually arrived at the scene. And certainly, had that been something that we were allowed to be heard on, that was something that we could have narrowed down and tried to get more information. But just what was presented during the trial, I don't think that there is sufficient evidence or information to make a determination as to whether that would be an exception to the hearsay. So again, I think that's part of why we certainly would contend that this balancing test needed to have been done. And I would, I believe, the cover. Well, I guess I could go on about some other points, but if the court just wants to hear specifically about the harmless error, I believe I've made my point on that issue. I don't know if the court wants to hear further about any of the other issues that I've raised. Thank you very much. Thank you. May it please the court, Amy Ray for the United States. Your honors, any error by the district court in failing to explicitly apply the rule 32.1 balancing test is harmless for two reasons. First, at the end of the day, the government did explain why these witnesses were not there and there was sufficient reliability that had the balancing test been applied, there is, it would have, this evidence is admissible. You, but that goes to the likelihood that any change, if we were to reverse it, would be a pyrrhic victory, the court would conduct the analysis and the result would be the same. Yes. This doesn't go to, you're not retracting in any way your concession regarding the fact that it was. No, I'm absolutely not retracting any concession made in the brief that the district court in this case did not, before admitting this evidence, explicitly apply the Doswell balancing test. There's no evidence on the record that the court conducted that balancing test. He didn't even implicitly apply it, he just didn't apply it. That's correct, I think. The one thing though that I would say about that, Judge Wynn, is that he did note very early on that reliability was a key issue. And he said that in response to the very first objection. That's kind of where, you gotta kind of possible through the Doswell case. Yes. And Doswell rejected, specifically, the McAllen reliability test. So we can't hop on reliability as being the basis here, because McAllen is just not it. It makes it clear, you gotta balance the person's interest in this confrontation with the government's good cause for denying it. In that case, it was a report. And so you didn't bring Ms. Kemmes in. The court says, you gotta bring Ms. Kemmes in. Right. To do it. And I mean, it wasn't like you got live witnesses and they are the actual prosecuting folks in the case of what you have here. But then he throws in, they notice that if the hearsay evidence is reliable and the government has offered a satisfaction explanation of not producing an adverse witness. Doesn't say it will be permitted, it said it will likely be admitted under that rule. Right, and that's- What is the explanation that was given here while those witnesses were not there? Because they refused, they declined to come. What is the evidence of it? What, I mean, when you say they declined, what was said that they declined? Deputy Craven, or was it probation, no, I'm sorry, probation officer Kemp testified that he had a conversation with the victim, Ms. Williams. And that she said she did not want to come and testify because she did not want to be responsible for taking someone's freedom away. She declined to come and testify. That's the end of that. Well, could the government have subpoenaed her and required her to attend, perhaps? Was there any other effort? You know what concerns me is if that's the case, you can pretty much set up every case revocation hearing to be just like this. You've got two witnesses. These are the main witnesses. I mean, without them, you really have nothing in terms of what happened. All happens then. And you basically say, you could ask the question, you want to testify? They said, no, I really don't. Okay, you don't have to. Then go to the court and say, they don't want to testify. And that's the reason, and so let's put the probation officer on to testify everything that they just said. And then now you go to jail. Well, a couple of responses to that. That's pretty much it, isn't it? No, it's not exactly. I mean, that's- Tell me where I'm wrong on the assessment of whether they wanted to testify. Was anything done other than saying, you ought to come into court, and they say, no, I don't want to come. What more was done to impress upon them, you brought this charge here. We will make certain attempts to get you there. You have a duty to be here, and we want you here. And even if you put a spin out, and then they don't show up, and you say, well, we did everything possible. They have run away to another state, just don't want to do it, or whatever. That's not what was here. I mean, they could have been sitting right outside that courtroom, or they could have been sitting in the courtroom, or anywhere around. Not one effort wasn't even called to the stand, or wasn't even asked. Just, they don't want to testify, which happens, I know, in these kind of cases a lot. I acknowledge that, that you got the situation that's here. But all I'm saying is, you ought to do a little bit more than just, would you like to come? Because by its very nature, you're dealing with a strong relationship between people. And no, you don't want to go into court and testify. I mean, that's kind of a given. It is true that the government did not present any evidence, and as far as I know, the government did not do more than request that these ladies attend the hearing. That is correct. What was the specific way they requested it? They called and notified them, and asked them to appear, and they did not appear. Tell me what they said. They picked up the phone, and they said, hello, Ms. Johnson, or whomever, and would you like to come to court? Judge Wayne, honestly, I wasn't the prosecutor who called these women. Yeah, but I want to know this, because I think this to me, if you can do this in this case, I think every case, you can do the same thing. If I was a prosecutor and got an opinion to come back and say you can do this, every case from now on, I would probably frame it in such a way where there would be a witness up there. The probation officer would be doing the testimony of what the witness said. But that would be part of what the judge would consider, had he conducted a balancing test. Absolutely. And the other thing, I guess, concerns me is we're talking about a domestic violence victim. Who is going to be low. I'd like, can I finish? Please, Judge. Thank you. And there's got to be some caution in terms of requiring a person to confront someone with whom she has had a relationship, who has assaulted her in the past. Absolutely, and let me make another point here, because even if- Let me make a point, I want you to deal with this. That's all well and good, but there's no testimony of that. I mean, there's no testimony about there's got to be some consideration about this woman has got to be confronted or anything like that. All you got is she says I won't come. I totally agree with Judge Duncan and everything she just said. But none of that came out in the court. They don't want to come. Right. All that's said. That is true, but also on the record was an extraordinarily violent assault against the woman- All well and good, but the reasoning given is they don't want to come. Now, you've got to infer it now, violent assault. I mean, you get that in every case. I mean- Judge, what do you find? I mean, in violent assaults or whatever, you can't just look at it and say, they've got some bad stuff happening to them, so they don't want to come. If I may, there's a balancing test. No, no, no, you've conceded that. I understand that, but- There's error on the balancing test. The only thing we are dealing with now is this part of Doswell to say you've offered a satisfactory explanation for not producing the adverse witness. Balancing test is done. You didn't do that. Excuse me. Well, it hasn't been done, which is why we're here. It wasn't done, but the part of Doswell- Let me make sure I understand, so we are on the same page. I'm sorry. An error has been conceded that the district court did not do the balancing test, so we are not discussing balancing tests. We are discussing now the question that you import, which I'm not sure harmless error really is in Doswell. It's really a different way they phrase it that says it likely would be, so I'm not sure that's harmless error, but we'll go there. But even so, minimally, it says you need to offer a satisfactory explanation for not producing the witness, and your explanation is they don't want to come, right? Now, if I'm wrong on that, let me know, but that's all I heard was- There's nothing on the record that is different from that, but what Doswell says is if the hearsay evidence is reliable, and what the government offered in this case, first of all, let me make this point. A fair- No, no, finish that point, because that's McCallum that says the hearsay evidence is reliable. Doswell specifically says we decline to do so to maintain the McCallum reliability test. Doswell also says that if the hearsay evidence is reliable, and the government has offered a satisfactory explanation, and I understand Judge Wynn- For not producing the hearsay evidence will likely be admissible. And I want to recognize and acknowledge that your questions are suggesting that the government did not offer a satisfactory explanation. I'm not suggesting that, I'm only asking what is the satisfactory evidence. I'm not suggesting anything. I'm simply saying the explanation given here was she doesn't want to come. And you say that's satisfactory. I am suggesting that in balance with that, in light of the domestic violence nature of this offense. But let me move to the fact that we offered non-hearsay evidence in this case that establishes defendant's guilt beyond a reasonable doubt. Except in this case, it only had to be by a preponderance. But Ms. Bray, what about Mr. Joseph's point? He's saying I would have tried my case differently. That Mr. Woods might not have taken the stand. Essentially, if I had known this hearsay evidence regarding Ms. I mean, this was a big issue to him because it reflected his choice of a trial strategy. At that point, once the evidence was coming in, he had nothing to lose, I guess, by putting Mr. Woods on. Well, except Judge Keenan- So maybe that was harmful, if it affected his ability to present his case. If that was the only piece of evidence that proved the defendant's guilt on that point, perhaps. But first of all, with respect to Ms. Crisp, who had the only one of the several violations involving Ms. Crisp. There was a telephone call that was a recording, and the officer testified that he recognized both voices. Right, but what if without the defendant's admission regarding Ms. Crisp, the court, who knows, the court might have given a different assessment of that recording in terms of its reliability. But when you have the guy's admission, it becomes a no-brainer, sure. If the guy's admitted it, it certainly is reliable. Do you see what I'm saying? I do, I do, and I appreciate that, although I think that the government meets the hurdle of harmless error with respect to that violation. But that was only one, and with respect to Ms. Williams' violations, the government presented an excited utterance, exception of basically her written statement that was made immediately after. Now, the Deputy Craven testified that that statement was that he arrived within minutes of the 911 call, and that's- Yeah, and I agree with you, your case is a lot stronger regarding the Williams evidence. But my question is, the court didn't allocate so many months of supervised release for one violation and so many months for another, did it? No, it did not. Okay, so if there is a problem with regard to CRISP, and whether that error was harmless because it affected the trial strategy, then it might have to go back, irrespective of the fact that Ms. Williams, the evidence was far stronger in terms of- I would say this about that, Judge Keenan, and if Alicia CRISPS, which I actually think was the strongest evidence, but if the court were to hold that that was not satisfactory, the district court's explanation of sentence focused very specifically on the violations against Ms. Williams because it was the nature of that assault that caused the court to sentence this defendant to 26 months in prison. You're saying it's the flip of Doswell, where Doswell said, well, it could have been the marijuana, but the court was really concentrating on the heroin, and so we've got to reverse it, even though the marijuana would still- Right, I mean, I think if you look at the district court's explanation of sentence in this case, it does not appear that that sentence was driven by the violation as to Ms. CRISP. Having said that, if the court determines that that is error and decides to send it back, so be it, I suppose. The government doesn't- What do you mean if it determines error? You conceded the error. I'm sorry, Judge Wynn, I mean harmful error, as opposed to harmless error. There's not enough to establish harmless error, that's what you're saying. I got you. Yes, Your Honor. Yes, Judge Duncan. What about the domestic criminal trespass? Is there non-hearsay evidence? Yes, because the domestic criminal trespass involved Ms. Williams and her written statement that she provided immediately after the incident, which would be an exception to the hearsay evidence, establishes the criminal trespass. That she had told him he could not come, that he did not, the statement records that she doesn't even really know how he got himself into her home. And then he appears, so that's the domestic criminal trespass. How is that different from a conceded marijuana violation in Doswell? It's different because not only that one- It looked like to me it was harmless error when you saw that, but the court says no, not harmless error. Right, and the difference is that in this case, not only that one, but all the violations as to Ms. Williams were proved by non-hearsay evidence. So the only, and even the government would argue even the allegation as to Ms. Trisp, because the deputy himself testified that he recognized the voices and that, and authenticated that recording between those two parties. The basis of the amount in which it was proven in Doswell? I'm sorry. Marijuana violation? No, I'm not, in terms of Doswell, Doswell says the marijuana violation was admitted, as I recall. Right, and so in this case, what I'm saying is it's different from Doswell because we have proven all of the violations with non-hearsay evidence. And going back to that, with respect to the trespass, was there non-hearsay on the point that Williams told Woods not to return? Yes, it's in her written statement. She tells him that he is not welcome, that he is not to come to her house. He explains, she says that they have a conversation earlier in the day. And she says that, he says I'm going to come over and make you dinner, and she says no, and you're not welcome. But he came. He did. After that. And that, and so how does that, I'm unclear about that as an excited utterance. Well, she- When she was talking, when she was describing the situation to the officer? Well, there's that, yes. So we suggest that there are two pieces of evidence, sort of two classes of evidence that are non-hearsay with respect to Ms. Williams. The first is the statement that she provided verbally to Deputy Craven when he arrived. So he testifies to that statement. All that testimony is non-hearsay. Because it's his reporting of a verbal statement that she gave immediately after he arrives. She also provides a written statement that's the same time. It's within about an hour or two. And this court's Jackson decision is relevant on the question. I'm sorry, just to get to the point. The instruction not to return is in that written statement? Yes, it is. In the written statement, she describes that she told him not to come back. She also describes that she told him, you know, repeatedly to leave once he appeared at 2 a.m., I guess, in her bedroom and ripped off the covers. But he was told to leave. They returned, she returned, so the evidence was with her kids around midnight. That's in the written statement. He's not there. She goes to sleep. He appears in her bedroom at 2 a.m. All of that is in the written statement that was provided immediately after. Every violation of a probation basis for revocation, are they all in the same class? They're not all in the same class, but these are. All of these were Class C. Now, the government did allege and charge a Class A violation of burglary, and the district court dismissed that. Was that conceded by the other side, that everything here is a Class C? I assume so, because there was never any suggestion during the district court proceedings that these weren't Class C violations. So to get trouble about this, because I'm wondering here, you prove, you're asserting this proof in Doswell, it was conceded. I wonder what would have happened had it just been conceded here, what's the difference between the methods of proof? You concede it, or you prove that there's a letter here, there's some other evidence. The fundamental error here is simply, it's quite simple, it's just conduct a balancing test. Could come out with the same result. And it just wasn't done, which is the same thing in Doswell. I mean, that was just a report. It is, but the difference is that in Doswell, the court couldn't say for sure. First of all, in Doswell, there's no evidence of non-hearsay evidence that was proving the heroin violation. We have that here. We have non-hearsay evidence that proves the violation that was relevant to the district court's failure to conduct the balancing test. There was no non-hearsay evidence to prove the heroin violation in Doswell. So that is where the comparison between the two cases ends. Is there non-hearsay evidence with regard to Chris? I think so, your honor, because the voice recording, the recording of that- That's hearsay. Well, it is, except that the officer testified and authenticated that he- Right, but it's still hearsay. It is, it is, but he authenticated the recording and said, here it is, and I don't think that it was reliable. Now let's just also remember that hearsay is admissible in supervised release revocation proceedings. And so, the Doswell concern is with adverse witnesses specifically, and that recording- I don't think the recording is an adverse witness. It is, I mean, it's a recording of, I honestly don't know except that I wouldn't characterize it as that, because it's simply a recording of a phone conversation. It's not as though it's testimony about what Alicia Crisp said he did. Did he record it? Pardon me? Did he record it? No, she recorded it. How did he get it? How did he get it? He was on the phone. She records the conversation. She provides it to the probation officer. How does he authenticate what she is recording? He says this is what she said about the recording itself, that he recorded- He says this is what she said about the recording. Right, he also says- To him, it's hearsay, so we got double hearsay as to how he authenticates this tape. He also said that he recognized the voices, and it was the defendant's voice. So it wasn't as though he wasn't providing any testimony relevant to the phone conversation. But if this court were to hold that, and I agree that with respect to Ms. Crisp, we do not have the strong non-hearsay evidence that we have, and I see that my time is up. Actually, what happens if we just send it back? Does it just get remanded, and then there's an opportunity to do a balancing test? Yes, but it's unnecessary to do that, and if this court sends it back, it ignores- Would that be hard to do? Pardon me? Would that be hard to do? It wouldn't be difficult to do, but it would be a problem with respect to the failure of this court to apply the harmless error test. Now, if this court obviously- It would be a failure of the prosecutor to articulate sufficient reasons that the court decided to accept as a basis for harmless error. Admittedly- But you shouldn't have to get the harmless error if you don't have error. Absolutely, Your Honor. That's all we're saying. If it goes back to acute error, what's the problem? Well, Rule 52 exists. The government is employing it here. If this court were to hold that it's not harmless, then it goes back, and of course, the government would retry the case, do it differently, and we presumably might be appeal-proof, might not, but Rule 52A does exist, and the government is invoking it and respectfully suggesting that the error was harmless. Could I ask, would it need to be retried? Perhaps just re-sentenced. It kind of depends on whether or not- How is it- How this court sends it back. Right. Okay. It depends. Thank you. Thank you, Your Honors. Mr. Joseph? Joseph? I'd like to address briefly the recording in regards to Ms. Chris. One of the reasons that I objected, obviously it being hearsay, but also the recording itself, there was no date stamp or anything that suggested when that actual recording was made. So not only did I object on the fact that the government didn't lay the proper foundation for that recording, because there was no way to tell when the recording was made and by whom. It was just- Those rules don't, I mean, this is a different kind of, this is not a trial. I understand that, Your Honor. But that was one of the reasons I objected. And again, I think that that goes to the reliability issue of the recording. Also, to touch again on the issue of the excited utterance on the exception to the hearsay, again, I will point out during my objection, the court overruled my objection and initially said that this evidence was reliable. So the court never really, the issue about the excited utterance never actually came up in court. And I would contend that had that been an issue, certainly had the opportunity to elicit more testimony about that issue, which wasn't done. And I just think that there is too many variables in this case for the court to say that this was a harmless error or that that would have been an exception on the excited utterance to the hearsay rule on the limited information that we have before us. So in closing, I would just argue, certainly to the court, that in this case, certainly everybody concedes that error was made, but I would certainly contend that it was very harmful. It affected this case. It affected the outcome of this case, specifically the information, the hearsay evidence. And in fact, as you all are aware, Mr. Woods was not only, he was not sentenced within the guideline range. He was actually sentenced to the statutory maximum because of the hearsay evidence that was allowed to come in. So, again, I just, in closing, I say certainly the evidence was very harmful to Mr. Woods. Thank you. Thank you very much. Mr. Joseph, our records reflect that you are court appointed on this appeal, and we would like to thank you for the very professional service you have rendered and the assistance you have given to this court. Thank you. We will come down and greet counsel and proceed directly to our last case.
judges: Allyson K. Duncan, Barbara Milano Keenan, James A. Wynn, Jr.